By the Court,

Nelson, Ch. J.
This is a motion to vacate or modify an award of arbitrators, in pursuance of the authority for the purpose conferred upon this court by the 2 R. S. 542, § 10, 11.
Under the 10th section, “ any party complaining of such an award, may move the court, designated in such submission, to vacate the same,’’ upon either of the following grounds: 1. That such award was procured by corruption, fraud, or other undue means; 2. That there was evident partially or corruption in the arbitrators, or either of them; 3. That the arbitrators were guilty of misconduct, in refusing to postpone the hearing upon sufficient cause shown, or in refusing to hear any evidence, pertinent [413] and material to the controversy, or any other misbehavior by which the rights of any party shall have been prejudiced; 4. That the ai bitrators exceeded their powers; or that they so imperfectly executed them, that a mutual, final and definite.award on the subject matters submitted was not made. Before this statute it had been frequently decided, that the awards of arbitrators could not be impeached in a court of law, except for gross partiality or corruption (2 Johns. R. 62, 3 id. 367; 9 id. 212; 10 id. 143; 5 Cowen, 423). These decisions were made under the act of 1791, which was taken from the 9tli and 10th William 3, and provided “ that the performance of the award might be enforced by attachment, where the submission was made a mle of court, unless it shall be made to appear, on oath, to such court, that the arbitrators or umpire misbehaved themselves, and that such award, arbitration or umpirage was procured by corruption, or other undue means” (1 R. L. 126, § 1). The 2d section declared, that an award procured by corruption, &c., should be adjudged void, and be set aside by a court of law or equity. Previous to this statute, these awards were not examinable into a court of law; and relief, even in case of corruption, could be sought only in equity (1 Saund. 327, n. 3, b. c. 2 Vern. 101, pl. 95, 251; Watson on Arb. 153; 3 Johns, R. 367; 9 id. 212; 2 Johns. Ch. Cas. 366; 8 East, 344). And the power of a court of law, since, extends only to those submissions which are made a rule of court under the act (1 Saund. 327, n. 3, b. c.; 7 T. R. 1; 1 Bing. 87; 2 Barn & Ald. 395; 2 Dowl. & Ryl. 266).
The provisions in the revised statutes are broaler than those in the act *234 of 1791, though perhaps not extending the powers of the court beyond the cases in which it had been customary to grant relief (2 T. R. 781; Pedley v. Goddard, 7 id. 73; 1 East. 276; Watson on Arb. 155. In the matter of Cargey v. Aitchinson, 2 Dowl. & Ryl. 222). We are now, however, confined to the grounds specified in the statute. The only ground relied upon in this case, by the counsel moving to vacate the award, is contained in the 4th subdivision, namely, that the arbitrators exceeded their powers. The [414] reasons specified in the points for this position are, 1. In opening and o verbal ling an account which had been settled by competent authority, and acquiesced in by all parties for a great length of time, which settlement was made in compromising a suit in chancery, and under advice of counsel; 2. In charging Hoyt with items that had been carried into the account upon the settlement, and with demands of which reasonable proof was produced of payment; 3. On account of the staleness of demands, death of witnesses, &c.; and 4. Because the opening of ancient and settled accounts is against the policy of the law, in fraud of the rights of parties, tending to encourage litigation, &c. These were all sound and forcible reasons, urged upon the consideration of the arbitrators, while engaged in the execution of the powers conferred upon them, to dissuade them from a re-investigation of the accounts that existed previous to, and were included in the settlement with the guardian, on the 6th July, 1813; and it is possible they may not have had proper weight and influence upon their minds in making up the award. The arbitrators may have erred upon the facts and the law in recharging items before omitted, or given up. Lapse of time, also, may have prevented explanations that were before full, and though the party himself was sworn, time may have obliterated from his own recollection the facts and circumstances necessary to such explanation. But the power to re-examine and re-settle the account, upon the allegation of error or mistake, presents altogether a different question, and must bo determined upon different grounds and considerations. This must be sought for in the bond of submission, which contains the authority conferred. However unwise or inexpedient the delegation of a power to over hale these ancient transactions may have been as concerned the rights of either party (and it was as hazardous to Emmet as to Hoyt, if not more so, as he was not a party to the transactions), still it was competent for the parties to confer it; and if it was.conferred, an error in the exercise of it, or even the abuse of it by the arbitrators, will not work an abrogation or discontinuance. We can [415] not deny the authority, even if we were unable to approve of the award.
By the terms of the submission, the arbitrators were to hear the proofs and allegations of the parties, of and concerning a claim for commissions or compensation, on the part of Hoyt, against the estate of the late John Tom, deceased, for winding up the affairs of the firm of Hoyt & Tom, and of and concerning all claims by and between either of the parties to the bor.d, arising out of said partnership, and for a final settlement of all differences between them. The power thus conferred is as broad as language could well make it. The restriction in the first clause, to commissions or compensation, is succeeded by the most enlarged authority that could be given over the subject; they were to hear proofs and allegations of and concerning all claims arising out of the partnership, and for a final settlement of all differences between the parties, no limitation to any particular partnership transaction, parcel of property, or items of account, nor to dealings or accounts for any particular period of time, or to any specified claim made or difference existing at the time. The most general language is employed, and we do not see, upon a reasonable construction of it, how the arbitrators could refuse to hear and decide upon any claim, presented by either party, growing out of the partnership, if it *235 had been intended to restrict the hearing to the accounts and claims arising subsequent to the settlement in 1813, it would have been easy and quite natural to have said so; it must have been obvious to all, that the terms used could have no such effect.
If vve understood rightly one of the learned counsel for the motion, ho insisted that if the arbitrators violated the law of the land, in assuming to re-examine the accounts which were settled in 1813, they thereby exceeded the powers conferred upon them; and Morgan v. Mather (2 Ves. jun. 15), was referred to as an authority for the position. If this be so, it seems a necessary consequence that m award maybe reviewed by this court upon the merits, in all cases, the same as a report of referees, so far as respect's questions of law; and the grounds specified in the statute are altogether unimportant. It is true that Lord Commissioner Wilson does lay [416] down the general proposition of the counsel, in the course of his observations, p. 18; but it should be considered as somewhat qualified by the preceding remarks, where he undertakes to specify the several grounds upon which an award of abritrators may be set aside. The case afterwards came up before the lord chancellor, p. 21, on a re-hearing, where he observed, “that all the matters before them [the arbitrators] were within the compass of the submission: that all the argument turned upon error or mistake;’' but, he says, “ you have not stated corruption, misbehavior, or excess of powers, which are the only three grounds I know for setting aside awards.” An error of judgment upon a matter clearly' within the bond of submission can not be converted into an excess of power, within the meaning of that term without a very forced construction; that means the exercise of the judgment of the arbitrators upon a matter out of the bond, and which was not intended to be submitted to their arbitrament. In the case of Smith v. Cutler (10 Wendell, 589), these provisions of the revised statutes came under the consideration of the court, and the then chief justice there gave the true exposition of them, namely, that it could never have been the intention of the legislature that this court should sit in review upon the decisions of all the arbitrators in the state; if such had been their intention, they would have provided some writ of review or writ of error; that it was intended to give relief in cases of corruption or improper conduct on the part of the arbitrators or parties, or where there was a want of jurisdiction or the award was not final, but in no other case. Excess of power is but another term to express want of jurisdiction, and in that sense it is manifestly used in the statute, and can not mean a mere error in law in deciding upon the merits of the case. In the case before us, no misconduct is pretended; and the only ground presented or urged to vacate or modify the award, in our view, involves simply a consideration of the merits, a review of the decision of the arbitrators upon the several questions of law and fact that arose, in the course of the hearing. Even in respect to the account settled in 1813, if mistake or [417] fraud had been shown to the satisfaction of the arbitrators, it will not be pretended but that it might have been properly opened for the purpose of correction. Whether such was the fact or not, would necessarily involve an examination of the merits. Being satisfied that all the matters before the arbitrators vrere fairly within the scope of the submission, and that nothing has been shown to invalidate their award, within the authority conferred upon this court by the statute, the application to vacate or modify must be denied, and the motion to confirm must be granted.
Award confirmed and judgment accordingly.