Gustavus A. Fudickar, Appellant, *v.* The Guardian Mutual Life Insurance Company, Respondent.

The Supreme Court has no general supervisory power over awards of arbitrators; and where the arbitrators keep within their jurisdiction their awards, in the absence of corruption or misconduct, will not be set aside for errors of judgment, either as to the law or the facts.

They may be set aside for a palpable mistake of fact in the nature of a clerical error, such as a miscalculation of figures or for an error of law appearing on the face of the award, *i. e.*, where it appears that the arbitrators intended to decide according to law, but through mistake as to the law did not.

It is not necessary that it should so appear by express statement; it is sufficient if it be shown by clear and necessary inference. But the party alleging error, in order to sustain his action, must be able to show from the award itself that but for the mistake the award would have been different.

Unless restricted by the submission, arbitrators may disregard strict rules of law and evidence, and decide according to their sense of equity.

Plaintiff was employed by defendant as superintendent of agencies. He agreed faithfully to perform his duties, and by his contract was to receive, among other things, a per centage, which was to continue after the contract should cease to be in force and during his life, on renewal premiums on policies obtained through his agency, including renewal commissions to which he was entitled under a former contract, which was, in other respects, revoked. He was dismissed from his agency for alleged misconduct and defendant took control of the business, claiming that the contract and all of plaintiff's rights thereunder were terminated and forfeited. Plaintiff claimed that he was dismissed without cause, and that he was entitled to damages for the breach of the contract, including an allowance equal to the present value of his interest in the renewal premiums. Defendant denied this liability and claimed damages to a large amount for the misconduct of plaintiff. Cross-actions were brought, pending which the parties executed a submission to an arbitrator under the statute, of "all and all manner of actions, cause or causes of actions, * * * controversies, damages, claims and demands whatsoever." The arbitrator made his award finding plaintiff guilty of the misconduct claimed, which "has entailed upon the company great loss;" that he was justly dismissed and not entitled to damages; that he was not entitled to future commissions or to any sum in lieu of renewal commissions, and that he was indebted to the company $2,000 for unauthorized charges, deficient payments and otherwise. In an action to set aside the award, *held*, that under the submission the arbi-

trator had full power to determine all questions arising between the parties under the contract; that it did not clearly appear, upon the face of the award, that the arbitrator held, as matter of law, that plaintiff's misconduct barred him from any claim for commission on future renewal premiums, as it did not appear but that the arbitrator allowed the benefit of the renewal commissions, and as a set-off the damages sustained by the company.

After the case before the arbitrator was substantially closed the arbitrator wrote to defendant for a further statement, which it rendered. It appeared that the arbitrator advised plaintiff of the purport of the letter before it was sent, and afterward exhibited the letter and statement to him.   Plaintiff made no objection, but examined the statement and claimed the right to introduce proof in respect to it.   The arbitrator consented in case he concluded to regard the statement; to this arrangement plaintiff assented.   The arbitrator did not consider the statement in making his award.   *Held,* that the action of the arbitrator would have been cause for opening the award had it not been assented to by plaintiff, but that this was a waiver of the objection.

A witness was called by plaintiff, on the hearing before the arbitrator, for the purpose of proving statements of one of defendant's witnesses showing bias and prejudice on his part.   He was excluded by the arbitrator under a rule adopted by consent of the parties to the effect that persons who were expected to be examined as witnesses should be excluded from the room, except while testifying.   *Held,* that while an award will be set aside for a refusal of the arbitrator to receive competent evidence on the merits, the rejection of the evidence offered, under a mistaken construction of the rule, was not a sufficient cause for setting it aside.

*It seems,* that under the contract between the parties the agreement for faithful performance, on the part of plaintiff, was not a condition precedent to his right to the renewal premiums, but they were independent covenants, and plaintiff, by breach of his agreement, did not lose his right to such commissions on business done prior to the breach.

(Argued March 29, 1875; decided September 21, 1875.)

APPEAL from judgment of the Superior Court of the city of New York, affirming a judgment in favor of defendant, entered upon a decision of the court at Special Term. (Reported below, 5 J. & S., 358.)

This was an action to set aside an award.

The plaintiff, prior to April, 1869, had been in the employ of defendant as superintendent of agencies in certain States.

On the 1st of April, 1869, a new contract was entered into

between the parties, giving plaintiff sole charge of defendant's agencies in certain States, by which plaintiff agreed to "devote his time and attention, in a faithful manner, to developing and extending the business of the company." He was to receive as his compensation thirty-six and a half per cent of the first year's premiums on policies, and ten per cent on all renewal premiums, to be continued during his life, with certain other allowances for expenses. The agreement, by its terms, revoked all former contracts between the parties, except that the renewal commissions upon business obtained under them were to be continued. The agreement was to be binding on the company for five years, and "if it should cease to be in force" plaintiff was to be "entitled to all the renewals of the business done previous to the change." Subsequent contracts additional and amendatory, were made. In April, 1870, defendant gave notice to plaintiff, declaring the contracts canceled, and immediately took possession and assumed control of the offices and agencies established by plaintiff and discharged him from its employ, claiming a right to do so for alleged misconduct. Plaintiff claimed a large amount due him for commissions, renewals, etc. Defendant claimed large damages by reason of the alleged misconduct. Cross actions were brought, and pending them the parties agreed to an arbitration. A submission in writing was executed, by which the arbitrator named was authorized to "arbitrate, award, order, adjudge and determine of and concerning all and all manner of actions, cause and causes of actions, suits, bills, bonds, judgments, quarrels, controversies, trespasses, damages, claims and demands whatsoever, now pending, existing and held by and between" the said parties. The arbitrator entered upon his duties. Upon the trial before the arbitrator, the defendant here called one Mr. Baldenecker, as a witness. Plaintiff called one Mr. Hertog, a witness, and offered to prove by him declarations on the part of Baldenecker, to the effect that in testifying against plaintiff he expected to be revenged upon him. As the case states: "The arbitrator stated that under the rule by which the parties were excluded

from the room who were expected to be examined, except while testifying, he could not permit Mr. Hertog to be examined unless the defendant consented." This defendant's counsel declined to do. It appeared that a rule had been adopted at the beginning of the hearing, at plaintiff's request, that no person who had been in attendance upon the arbitration should be examined as a witness, and that Mr. Hertog had been in attendance as a clerk of plaintiff. The arbitrator made his award, which, after setting forth various acts of misconduct on plaintiff's part, contained the following :

" That it became the duty of the company, with regard to its policyholders, including those parties who had become such by the agency of Mr. Fudickar, to dismiss him, is evident to me.

" That his unjustifiable action has entailed upon the company great loss, which will be known and felt during future years, is also plain to me, and I therefore decide :

" 1. That Mr. Fudickar was justly dismissed, and therefore is not entitled to damages for his dismissal by the company.

" 2. That he is not entitled to any payment as commission upon first premiums of business done, or yet to be done, subsequent to his dismissal.

" 3. That he is not entitled to future commissions upon such of the business introduced by him as may be renewed or continued in the company; nor to any present sum of money in lieu of renewal commissions.

" 4. While the weight of the testimony indicates that Mr. Fudickar justly owes the company a much larger sum for excessive and unauthorized charges made to the company, for deficient payments and otherwise, I decide that Mr. Fudickar is indebted to the company the sum of $2,000."

After the close of the hearing the arbitrator sent to defendant's president a letter asking him to have prepared a statement of plaintiff's commissions in the months of his service and of his charges, showing what should have been allowed and credited, and what charges were objectionable in view of

the company. The arbitrator testified that before sending it he told plaintiff what he proposed to do.

A statement was received from the company, which the arbitrator showed to plaintiff, who made his criticisms upon it and claimed the right of introducing answering evidence. The arbitrator told him he could have that privilege if he concluded to use the statement; that he thought then he should ignore it. Plaintiff assented. The arbitrator afterward advised plaintiff that he should not regard the statement, and as he testified "threw it out of consideration utterly and ignored it."

The court found that the award was not procured by corruption, fraud or undue means; that there was no partiality on the part of the arbitrator, nor was he guilty of any misconduct, and did not exceed his powers; that he committed no errors sufficient to invalidate his award, and that the error in writing the letter to, and receiving the statement from, the defendant, was cured and waived by plaintiff's action.

*Joseph R. Flanders* and *Augustus J. Requier* for the appellant. A court of equity will set aside an award for corruption, partiality or gross misconduct on the part of the arbitrator, or for a palpable mistake of law or fact. (*Herrick* v. *Blair*, 1 J. Ch., 101; *Roosevelt* v. *Thurman*, id., 220; *Van Cortlandt* v. *Underhill*, 17 J. R., 405; *Perkins* v. *Giles*, 53 Barb., 342; *Wool* v. *A. and R. R. R. Co.*, 8 N. Y., 160; *Butcher of Croyden's Case*, 3 Ch., 76; 2 Vern., 251; 1 Eq. Cas., Abr., 59; *Spettigue* v. *Carpenter*, 3 P. Wms., 361; *Morgan* v. *Mather*, 2 Ves. Jr., 15; *Lingon* v. *Ford*, 5 Mumf., 10; *Walker* v. *Frobisher*, 6 Ves. Jr., 70; *Ld. Lonsdale* v. *Littledale*, 2 id., 450; *Metcalfe* v. *Ives*, 1 Atk., 63; *Harvey* v. *Shelton*, 7 Beav., 455; *In re Hick*, 8 Taunt., 694; *Emery* v. *Owens*, 7 Gill [Md.], 488; *Knowlton* v. *Mickles*, 29 Barb., 465; *McMahon* v. *N. Y. and E. R. R. Co.*, 20 N. Y., 467; *Collin* v. *Vanderbilt*, 8 Bosw., 313; *Jenkins* v. *Liston*, 3 Gratt. [Va.], 235; *Conrad* v. *Mass. Ins. Co.*, 4 Al. [Mass.], 120; *Yale* v. *Gwinits*, 4 How. Pr., 253; *Dorlon* v. *Lewis*, 9 id., 1; *Roosa* v. *S. and W. Tpke. and*

*Pl. R. Co.*, 12 id., 298 ; *Bainbridge* v. *Livermore,* 14 Abb.
Pr. [N. S.], 227 ; *Carneforth* v. *Geer*, 2 Vern., 705 ; *Ridout*
v. *Pain*, 3 Atk., 494 ; *Kent* v. *Elstob*, 3 East, 18 ; *Richard-
son* v. *Nourse*, 3 B. & A., 237 ; 5 C. L., 269; *Ames* v. *Mil-
ward*, 8 Taunt., 637 ; 4 C. L., 234 ; *Westmore* v. *Forbes*, 13
East, 357 ; *Auburt* v. *Maze*, 2 B. & P., 375 ; *Wohlenburg* v.
*Lageman*, 6 Taunt., 251 ; *Herrick* v. *Blair*, 1 J. Ch., 101 ;
*Campbell* v. *Weston*, 3 Paige, 138 ; *Perkins* v. *Giles*, 53
Barb., 347.)   Circumstances that would warrant the rescis-
sion of a contract must be acted upon promptly, after coming
to the knowledge of him who would rescind, or they will be
deemed waived or condoned.   (*Lawrence* v. *Dale*, 3 J. Ch.,
23 ; *McNevin* v. *Livingston*, 17 J. R., 436, 437 ; *Lawler* v.
*Shelden*, 11 How. Pr., 526 ; *Monahan* v. *Story*, 2 E. D. S.,
393 ; *Hunt* v. *Singer*, 1 Daly, 209 ; *McDonald* v. *North*, 47
Barb., 530.)   Defendant could not rescind the contract with-
out plaintiff's consent for alleged breaches on his part.   (2
Pars. on Con. [3d ed.], 192, 193 ; *Weaver* v. *Sessions*, 6
Taunt., 154 ; *Franklin* v. *Miller*, 4 Ad. & El., 599 ; *Hunt*
v. *Silk*, 5 East, 449 ; *Beed* v. *Blandford*, 2 Y. & J., 278 ;
*DuBois* v. *H. and D. C. Co.*, 4 Wend., 285 ; *Tipton* v.
*Fietner*, 20 N. Y., 431 ; *Utter* v. *Stuart*, 30 Barb., 23 ; *Hunt*
v. *Singer*, 1 Daly, 209.)   The arbitrator could not annul the
contract of the parties and make a new one for them.   (2
Pars. on Con. [3d ed.], 27, 34 ; *Emery* v. *Owings*, 7 Gill
[Md.], 494 ; Broom's Leg. Max. [6th Am. ed.], 456.)   The
fact that all the testimony taken before the arbitrator was not
put in evidence on the trial, does not warrant any presump-
tion that can aid defendant.   (*U. S.* v. *Wilkinson*, 12 How.
[U. S.], 253 ; Broom's Leg. Max. [6th Am. ed.], 125.)

*Wheeler H. Peckham* for the respondent.   Error of the
arbitrator would afford no sufficient ground of interference.
(Caldwell on Arbitration, 373, 374, 384 ; *Knox* v. *Synonds*,
1 Ves. Jr., 369 ; *Morgan* v. *Mather*, 2 id., 21 ; *Goodman* v.
*Sayres*, 2 J. & W., 249 ; *Van Cortlandt* v. *Arrowhill*, 17
J. R., 408, 411, 415, 420 ; 2 Story's Eq., §§ 1451, 1454, 1455 ;

*Chase* v. *Wetmore*, 13 East, 358.) Partial performance is no ground for any recovery. (*Huntington* v. *Chaflin*, 10 Bosw., 262; *Lantry* v. *Parks*, 8 Cow., 63; *Marsh* v. *Rulesson*, 1 Wend., 514; *Sickles* v. *Patterson*, 14 id., 257; *Bonesteel* v. *Mayor*, etc., 22 N. Y., 162; *Walker* v. *Willard*, 29 id., 375; *Smith* v. *Brady*, 17 id., 172; *Tompkins* v. *Dudley*, 25 id., 272; *Husted* v. *Craig*, 36 id., 221; *Niblo* v. *Binsse*, 44 Barb., 54; *Chase* v. *Hogan*, 3 Abb. Pr. [N. S.], 57; *Ellen* v. *Topp*, 6 Exch., 424.) The errors alleged were not sufficient grounds to impeach or set aside the award. (*Emmet* v. *Hoyt*, 17 Wend., 410; *Smith* v. *Cutler*, 10 id., 589; *Viele* v. *T. and B. R. R. Co.*, 21 Barb., 382, 395, 396; *Dater* v. *Wellington*, 1 Hill, 319; *Batler* v. *Mayor*, etc., id., 489; *Perkins* v. *Giles*, 53 Barb., 342; affirmed, 50 N. Y., 228; *Morewood* v. *Jewett*, 2 Robt., 496; *Olt* v. *Schroeppel*, 1 Seld., 482; *Trumbull* v. *Martin*, 37 How. Pr., 20; *Burchell* v. *Marsh*, 17 How. [U. S.], 344.)

ANDREWS, J.  Prior to the submission to arbitration of the controversy between the parties, the defendant had dismissed the plaintiff from his agency, and assumed to treat the contract of April 1, 1869, and all rights of the plaintiff thereunder, as terminated and forfeited by his misconduct. The company thereupon assumed control of the business and agencies established by the plaintiff, and not only prevented him from securing new business, but denied and refused to recognize his right to commissions on renewal premiums which might thereafter be paid on policies then in force, issued upon applications procured by him. It was claimed by the plaintiff that he was dismissed without cause and that he was entitled to damages for the breach of the contract by the defendant, including therein compensation for prospective profits upon new business, which he might have secured if the contract had not been terminated; and also, an allowance equal to the present value of his interest in the renewal premiums upon policies issued through his agency.

The defendant denied the liability claimed, and insisted

that it had sustained damages in a large amount from the infidelity of the plaintiff. Out of this controversy two actions at law arose; one by the plaintiff against the defendant, and a counter-action by the defendant against the plaintiff; and pending these actions the parties executed a submission under the statute, under which an award was made which is the subject of the present suit. The language of the submission is general and comprehensive. After reciting that divers disputes had arisen between the parties they agree to submit to the arbitrator named, to award and determine of and concerning "all and all manner of actions, cause or causes of action, suits, bills, bonds, judgments, quarrels, controversies, damages, claims and demands, whatsoever," pending, existing or held between them.

The arbitrator under the submission had full authority to investigate and determine all questions arising under the contract of April 1, 1869; the mutual demands and claims of the parties growing out of the dismissal of the plaintiff, and, in short, his jurisdiction was coextensive with the whole field of controversy.

It is the general doctrine pervading our jurisprudence on the subject, that the decision of an arbitrator in a matter within his jurisdiction is final and conclusive between the parties. The jealousy with which, at one time, courts regarded the withdrawal of controversies from their jurisdiction by the agreement of parties, has yielded to a more sensible view, and arbitrations are now encouraged as an easy, expeditious and inexpensive method of settling disputes, and as tending to prevent litigation. The arbitrator is a judge appointed by the parties; he is by their consent invested with judicial functions in the particular case; he is to determine the right as between the parties in respect to the matter submitted, and all questions of fact or law upon which the right depends are, under a general submission, deemed to be referred to him for decision. The court possesses no general supervisory power over awards, and if arbitrators keep within their jurisdiction their award will not be

set aside because they have erred in judgment either upon the facts or the law. If courts should assume to rejudge the decision of arbitrators upon the merits, the value of this method of settling controversies would be destroyed, and an award instead of being a final determination of a controversy would become but one of the steps in its progress. The courts in this State have adhered with great steadiness to the general rule that awards will not be opened for errors of law or fact on the part of the arbitrator. (*Shephard* v. *Watrous*, 3 Caines, 166; *Cranston* v. *Kenny*, 9 J. R., 212; *Jackson* v. *Ambler*, 14 id., 105; *Mitchell* v. *Bush*, 7 Cow., 185; *Emmet* v. *Hoyt*, 17 Wend., 410; *Winship* v. *Jewett*, 1 Barb. Ch., 173; *Perkins* v. *Giles*, 50 N. Y., 228.)

The general principle is subject to the qualification that awards may be set aside for palpable error of fact, like a miscalculation of figures, or mistake of that nature. It may also be set aside for error of law, when the question of law is stated on the face of the award, and it appears that the arbitrators meant to decide according to the law but did not. In both these cases the award is not what the arbitrators themselves intended. It is not, in fact, their judgment; for, except for the mistake, the award would have been different. But it is held, in accordance with what seems to be a just view of the subject, that arbitrators may, unless restricted by the submission, disregard strict rules of law or evidence and decide according to their sense of equity, (*Kleine* v. *Catara*, 2 Gall., 61; *Boston Water Power Co.* v. *Gray*, 6 Met., 131; *Tyler* v. *Dyer*, 13 Me., 41; *Hazeltine* v. *Smith*, 3 Vt., 535; *Cushman* v. *Wooster*, 45 N. H., 410; Sto. Eq., § 1454.) If, for example, a claim for compensation for the erection of a building by one person on the land of another, under a contract which, by technical construction, makes the right to compensation dependent upon full performance by the builder, is referred to arbitration, and it turns out that there has been a failure by the builder to comply with the contract in some particulars, although the benefit which the other party has received from part performance is greater

than the injury sustained by the failure to perform the contract in full, the arbitrator may, I think, where the submission is general, award the excess of benefit, although in an action at law upon the contract he could not, within the decision in *Smith* v. *Brady* (17 N. Y., 172), recover.

It must, as has been already observed, appear upon the face of the award that the arbitrators have mistaken the law to enable the court to set aside the award on that ground. If it appear from the award that the arbitrators intended to decide the case according to the law, and the grounds for their decision are set out, which in law do not justify it, the case is brought within the exception to the general rule, and the court will set it aside. But it is not necessary that it should appear by express statement in the award that the arbitrators intended to decide according to law, in order to give the court the power of review. It is sufficient if this be shown by clear and necessary inference.

It is a settled principle governing this subject, and which ought never to be lost sight of, that all reasonable intendments and presumptions are indulged in support of awards. The party alleging error of law must be able to point to the award and say that the arbitrator, as appears from the award itself, intended to decide the case according to law, and has mistaken it, and that except for this mistake his award would have been different.

It is claimed, by the learned counsel for the plaintiff, that it does appear from the award in this case that the decision of the arbitrator proceeded upon a mistake of law. The mistake is alleged to consist in this: that the arbitrator having found that the plaintiff was guilty of misconduct which justified his dismissal, decided, as matter of law, that the breach by the plaintiff of the stipulation in the contract that he should faithfully perform his duties as agent, followed by his discharge from his agency, barred him from any claim to commissions on renewed premiums which might thereafter be paid upon policies issued upon applications procured before that time by the plaintiff under

the contract. If it clearly appeared that the award was made upon the ground suggested, it would be, at least, very doubtful whether it could be supported. It is found, by the judge at General Term, that the plaintiff, while acting under this contract, and the previous contract of February 15, 1868, had established and secured a large and profitable business for the defendant, on which, as appears in the case, the annual renewal premiums were about $250,000, and the value of the plaintiff's interest thereunder was more than $20,000. If this interest was forfeited, it must have been for the reason that faithful performance by the plaintiff of his duties as agent under the last contract was made thereby a condition precedent to his right to claim any benefit under either. It would be very difficult to hold that the mutual covenants in the contract of April 1, 1869, were dependent so as to make the benefit of the renewals secured by that contract to the plaintiff dependent on full performance on his part. It is a material circumstance bearing upon the construction of the contract in this respect, that it expressly reserves to the plaintiff the renewal commissions to which he was entitled under the previous contract of February 15, 1868, which contract, in all other respects, was annulled by the contract in question. It cannot be supposed that the right to these commissions, which was expressly reserved, was to depend upon the performance by the plaintiff of the new agreement. Again, the plaintiff, by the contract in question, agrees to devote his time and attention in a faithful manner to developing and extending the business of the company in the districts mentioned, and also to be responsible for the agents therein appointed by the company under his direction. The plaintiff's covenant faithfully to discharge his duties as agent goes in part only to the consideration of the defendant's promise, and this is one of the tests by which covenants are ascertained to be independent. (1 Saund., 320; 2 id., 352.) There is still another suggestion tending to show the independent character of the covenants in question. The contract provides that "it shall be binding

on the company " for the term of five years, but there is
no provision obligating the plaintiff to continue in the ser-
vice of the company for any definite period. It was optional
with him to remain or not; and a provision was inserted
that if the contract " should cease to be in force," his
interest in the business done previous to the change should
continue. Each instance of procuring an application upon
which a policy was issued was a separate and independent
transaction, to which the covenant for the payment of commis-
sions applied distributively; and if, before the misconduct
complained of, the plaintiff's claim to commissions on busi-
ness done to that time was complete and perfect, it would not
be lost by a subsequent violation of duty, although if dam-
ages resulted therefrom they might be made the subject of
counter-claim.

The difficulty in the way of the plaintiff, in respect to
the point just considered, is, that it does not appear with
that certainty, which is necessary to authorize the court to
interfere with an award, that the arbitrator decided the
case upon this question of law suggested by the plaintiff.
The arbitrator, in his statement embodied in the award,
considered, at great length, the question whether the plain-
tiff's conduct justified the company in dismissing him ; and
a variety of facts are stated which, in the judgment of the
arbitrator, justified the company in doing so. The arbitra-
tor finds that the plaintiff repeatedly, before his dismissal,
had broken his contract, and details acts on his part which
show that he was guilty of fraudulent conduct towards
the company in his agency ; and he states " that his unjusti-
fiable action has entailed upon the company great loss, which
will be known and felt during future years." It does not
appear that the arbitrator, in making his award, did not
allow the plaintiff the benefit of the commission on renewals,
as upon a continuing contract, and set off against that account
the damages sustained by the company from the plaintiff's
misconduct, which would be clearly within his authority.
But a small part of the evidence taken before him is in the

case. We cannot say that the evidence did not amply justify him in finding that the company's loss from the plaintiff's misconduct exceeded any sum which he could claim under the contract. There is no statement in the award that the arbitrator decided, as a question of law, that full performance by the plaintiff of his contract was a condition precedent to any recovery, nor is that a necessary inference from any thing contained therein. The conclusion of the arbitrator, that the plaintiff was not entitled to commissions on renewal premiums followed the statement of facts embodied in the award, and we cannot say, from what appears, that it was not based on an adjustment of the mutual claims of the parties, conceding the right of the plaintiff to commissions on renewals.

There is a distinct ground upon which the plaintiff claims that the award should be opened, viz., the partiality, corruption and misconduct of the arbitrator on the trial; and the specifications upon which the plaintiff relies will be briefly considered.

1. The fact that the arbitrator, in reaching the conclusion that the plaintiff was guilty of misconduct which justified the company in dismissing him, considered and to a considerable extent relied upon evidence of transactions which took place under the previous contract, neither establishes or tends to establish partiality or corruption. The evidence so far as appears, was received without objection. It was not the sole ground of the arbitrator's judgment. Many other facts are stated in the award which justified the conclusion that the dismissal was proper.

2. The letter written by the arbitrator to the company after the case had been substantially closed, and the receipt by the arbitrator from the company in reply of a new statement of account, would be cause for opening the award, except for the reason that the evidence warrants the finding that the plaintiff was advised by the arbitrator, before the letter was sent, that he proposed to send a letter of that purport, and afterward exhibited the letter and the statement to the plaintiff; that the

plaintiff made no objection either to the arbitrator's sending the letter or receiving the statement, but examined and criticised it on the merits, and claimed the right to introduce proof in respect to it, which the arbitrator consented to receive if he concluded to regard the statement at all; to which disposition of the matter the plaintiff assented; and that the arbitrator did not consider it in making his award.

I have reached the conclusion that the objection here considered ought not to prevail, with considerable hesitation. Awards are, if possible, to be upheld. But any violation of natural justice by an arbitrator, such as receiving material evidence from one of the parties without the knowledge or consent of the other, should be condemned; and in several cases awards have been set aside for this reason. (*Burton* v. *Knight*, 2 Vern., 515; *Lord Lonsdale* v. *Littledale*, 2 Ves. Jr., 450; *Walker* v. *Frobisher*, 6 id., 70; *Harvey* v. *Shelton*, 7 Beav., 455; *Clelland* v. *Hidley*, 5 R. I., 163; *Spear* v. *Bidwell*, 44 Penn. St., 53.) In this case the sending of the letter was not justified by any thing which occurred on the trial. The right was reserved to the referee to examine the defendant's books. The letter did not call for the books or a transcript from them, but for the answer or claim made by the company as to certain credits or charges not appearing on the books, in respect to which proof was given on the trial. But after the plaintiff was apprised of the proceedings of the arbitrator, if he disapproved of them he should have then objected. He ought not to be permitted, after having lain by and taken the chance of a favorable award, to object when he finds the award against him.

3. The exclusion of the testimony of Hertog, offered for the purpose of impeaching the testimony of Baldenecker, was not, I think, justified by the rule adopted in respect to the examination of witnesses. If an arbitrator refuses to hear competent evidence on the merits, his award will be set aside. (*Van Cortlandt* v. *Underhill*, 17 J. R., 405.) But a refusal by an arbitrator, acting upon a mistaken construction of a rule, adopted by consent to govern the

arbitration, to receive evidence tending to show bias or prejudice on the part of a witness, is not, I think, a cause for setting aside an award; and no authority to sustain the position of the plaintiff has been cited.

In conclusion, it may be observed that the judge at Special Term found as a fact, that there was no partiality, misconduct or corruption on the part of the arbitrator.

We see no legal ground for reversing the judgment in this case, and it must, therefore, be affirmed.

All concur.

Judgment affirmed.