FRANCIS E. BURROWS, Respondent, v. CHARLES M. DICKINSON, Appellant.

*Referee's report — when set aside because of bias and prejudice upon the part of the referee — what will excuse delay in making the motion.*

This was an application to set aside the report of a referee upon the ground that he had become biased or improperly influenced against the defendant before the final decision of the action. It appeared that the referee, from time to time as the trial proceeded, importuned the defendant to aid him in securing an appointment to an office from the governor, and believed that the defendant could by earnestly exerting himself secure it for him; that these importunities continued to be addressed or suggested after the submission of the case and until near the time of its decision; and there was reasonable cause to believe

that the prejudice was occasioned by the failure of the defendant to answer the last letter from the referee, which was written shortly before the case was decided.

*Held,* that the report should be set aside.

The report was made on May 11, 1880. The motion to set aside the report was made in February, 1884. It was shown by the affidavits that the defendant had intended to appeal from the judgment, and was therefore compelled to have a case made and settled by the referee; that both the defendant and his counsel deemed it injudicious and dangerous to institute proceedings to set aside the report until the case had been settled, and that this application was made as soon as it could be after such settlement had been made.

*Held,* that these facts furnished a sufficient excuse for the delay.

APPEAL from an order made at a Special Term denying a motion to set aside the report of a referee.

*D. S. Richards,* for the appellant.

*E. H. Benn,* for the respondent.

DANIELS, J.:

The motion to set aside the report was presented upon two grounds, that of newly discovered evidence, and the alleged fact that the referee had become biased or improperly influenced against the defendant before the final decision of the action. Further objections were made in the moving papers to him as a suitable or proper referee, which do not require to be considered. For as they were known to the defendant before the trial commenced, and he then failed to apply for relief because of those objections, he waived his right and afterwards was by his own act deprived of all that ground of complaint on his part. But as to the alleged fact that the referee was biased against him, no such answer can be made to the application. For that does not appear to have become developed, until after the action was fully submitted to the referee for his decision. The bias or influence arose as a matter of fact out of the disappointed expectation of the referee that the defendant would aid him in securing an appointment from the governor of the State of New York. That he desired this appointment is very clearly proved by the affidavits upon which the motion was heard, and this desire continued and was made the subject of interviews during the progress of the trial, and the defendant failed to exert himself in

favor of the referee, for the reason that he deemed him to be an improper person for the official appointment, but that was not disclosed to the referee, but the reason assigned for his indisposition to act seems to have been the pendency of the trial in this action. That was the circumstance on which the defendant endeavored to excuse himself without the offense to the referee, which he apprehended would be created by an unqualified refusal to assist him in his application, and that continued until the hearing had been completed and the cause was submitted to the referee for his decision. At that time there is reason for believing that the referee expressed his convictions in the case to be favorable to the defendant, but afterwards a change apparently took place on account of the failure of the defendant to comply with his solicitations to aid him in his application for the official appointment, and that change has been supposed to have resulted in the decision of the case against the defendant. This has been unqualifiedly denied in the affidavit made by the referee. But the statements made by the defendant have been very strongly corroborated in an affidavit made by his counsel, and also by a letter written by the referee to the defendant after the case had been in fact submitted to him for his decision. The trial was commenced on the 2d of December, 1879, and it continued through about twenty different sittings, and the first report of the referee, which determined the issues in the action, was made on the 11th of May, 1880. Between the time of the final submission of the case and the making of the report the referee addressed and sent this letter to the defendant :

" Law Office of George Becker,<br>New York, <i>April</i> 22, 1880.

C. M. Dickinson, Esq. :

Dear Sir. — I leave to-night for Pittsburg, Pa., on a case involving $10,000. I may be absent a week. On my return I will send you copy of brief, etc., as requested.

Yours truly,<br>GEORGE BECKER.

P. S. Senator Halbert in here yesterday. He has exhausted himself with the governor.

If any of my friends would personally go to Albany and make a dead set with the governor I would get that place. I know I would

from what I hear from there, but I have not had time or inclination to go there myself, and it would not be as well as for some one else.

Any one who would do it will be recompensed. I only wish to hold the place a short time as an advertisement, etc. It's going to be Grant against Tilden as it now looks."

Which fully confirms the statement that the referee was anxious to secure this official appointment, and looked to the defendant as a person through whose agency it probably might be obtained. It was evidently written as a last appeal, and as no response was made to it by the defendant, it may very well have created in the mind of the referee such a state of disappointment as decidedly to prejudice him against the defendant on account of his failure to exert himself, as it was expected he should, in the referee's behalf.

The letter is very decisive as evidence in confirmation of what is stated by the defendant to have been the nature of the interviews alleged to have taken place between himself and the referee during the progress of the trial of the action, and also that the subject of these interviews was the aid and assistance solicited by the referee from the defendant in favor of his application to the governor for official appointment, and as that was finally withheld it may very well and very naturally have resulted in prejudicing the mind of the referee against the defendant, who in this manner had disappointed his anxious and earnest expectations. If it were not for this letter the denials of the referee might be accepted either as an accurate relation of the facts or as subjecting the statement of the defendant to too much doubt to be rendered the foundation of a conclusion adverse to the referee. But the letter is plainly of such a character as fully to confirm the statements made by the defendant concerning these interviews, and it indicates the existence of at least a final hope, or expectation, that the defendant would still yield and by his personal interposition with the governor aid the referee in securing his appointment.

This was the relation which the referee voluntarily placed himself in with the defendant. It was done with the expectation of securing substantial benefit, by means of his solicited exertion, and it was certainly very improper for the referee having this action before him to have placed himself in that situation. The influence and effect would be expected to be favorable to the defendant if he

complied with the request of the referee, and in that manner preju-
dicial to the plaintiff, while if he declined to aid the referee in his
application, the omission would be unfavorable to the defendant,
tending to exasperate the mind of the referee through his disap-
pointment, and to prejudice him against the man who had failed to
meet his expectations, by serving him in the matter deemed to be
exceedingly important to his standing and position. Whether the
defendant acted or not, it would tend to swerve the mind of the
referee from the just determination of the controversy submitted to
him by the evidence, and the law will not permit a person exercising
judicial authority to place himself in such a position. It requires, on
the contrary, the most complete impartiality, and the avoidance of
even the appearance of such relations as would bias the judgment
or swerve in the slightest degree the action of the referee. It was
his duty to maintain himself as far as that possibly might be done
in a state of complete impartiality, as well as independence of each
of the parties. For by no other course would he be expected to
give that proper degree of weight or effect to the evidence which
is always required for the just disposition of legal controversies.

The referee failed to maintain this impartial relation to the parties
to this controversy, and there is reason for believing, therefore,
although he himself may not have discovered that to have been the
condition of his mind, that he became biased against the defendant
after the action had been submitted for his decision, and before he
finally made his report, and that this bias may have resulted in
injustice to the defendant, and under the authorities that would
ordinarily entitle him, as a matter of right, to have the report
set aside, and another trial of the action ordered. (*Stebbins* v.
*Brown*, 65 Barb., 272; *Livermore* v. *Bainbridge*, 44 How., 357;
affirmed by this General Term, 47 id., 350.) While the authorities
relied upon in support of the order, present a sufficient answer to
the application, so far as it has been based upon other facts, they do
not meet this aspect of the case. They relate, on the other hand,
to misconduct on the part of the referee, known and understood
during the progress of the trial, and then of a nature to be com-
plete and consummated. Where that may be its description, after
the discovery of the fact, proceeding with the trial will, in judg-
ment of law, deprive a party having this knowledge of the right

afterwards to move to set aside the report of the referee. (*Carroll* v. *Lufkins*, 29 Hun, 17; *Valienti* v. *Bryan*, 66 How., 302; *Fudickar* v. *Guardian Mutual Insurance Co.*, 62 N. Y., 392, are cases of this description.)

The misconduct in those cases complained of was not only known but it was entirely complete before the trial was ended or the case was submitted to the referee for his decision. While in the present case it continued from time to time during the trial, and finally presented itself by way of a last appeal through the letter which was written less than twenty days before the report itself was made; and it was by the failure of the defendant. to respond, as it seems to have been expected he would, to the appeal made by this letter, that the referee probably became prejudiced and improperly influenced.

There was, therefore, no such acquiescence in the further progress of the trial as there was in these cases, after the discovery of the fact that the referee had placed himself in such an attitude to the defendant as might prevent him from making a just disposition of the controversy, according to the evidence. But that was finally caused by the omission of the defendant to meet the expectation of the referee as it was disclosed in the letter; and when consciousness of that fact settled upon his mind this bias was probably created, and speedily afterwards resulted in the making of this report.

The defendant was engaged in the publication of a newspaper at Binghamton, and that the referee was looking to him for favors is further indicated by his indorsement on the postal card written in November, 1879, in which he requests the defendant to give him a notice. And this was declined by a letter written on the ninth of the same month by which the defendant made the following reply:

EDITORIAL ROOMS DAILY AND WEEKLY REPUBLICAN, 

(Personal.)        BINGHAMTON, *November* 9, 1879.

GEORGE BECKER, Esq.:

FRIEND BECKER. — I have not lost sight of your business card suggesting a notice. I have deferred it for these reasons: You have been appointed referee in a suit between F. E. Burrows and myself. I find some one here makes it their business to keep Mr. B. posted of everything I do. If I now say anything of you it

will doubtless go to him and I fear will be regarded as an attempt to influence you in my behalf, or at least it will excite suspicion. If agreeable to you, therefore, I will defer the matter until this law-suit is ended, when I shall take pleasure in saying some pleasant things of your ability, experience, etc.

Yours,

CHAS. M. DICKINSON.

Which he states was written to excuse himself for not commending the referee in his paper, and to avoid giving him offense, by reason of the omission during the pendency of the trial.

The correspondence is a further indication that the referee was convinced that the defendant was in a position to render him valuable aid and assistance, and that he was appealing to him to secure such advantages, and it further corroborates the correctness of the conclusions concerning the truthfulness of the defendant's statements of the interviews which took place between himself and the referee while this action was before him.

The motion to set aside the report, upon this as well as upon the other grounds, was not made until February, 1884, and this long intervening delay has been relied upon as an answer to the application; and in ordinary motions it would probably be so regarded. But as this misconduct has deprived the defendant of a fair and impartial disposition of the action, according to the evidence, the intervening delay should not be permitted to be attended with that result, unless that should be found to be inevitably necessary. For upon all occasions the court should be exceedingly careful to prevent legal controversies from being influenced in their determination in this manner, and to avoid the existence of relations between the referee and either of the parties, which must probably result either in injustice to himself or other parties to the controversy. No slight circumstances should prevent the correction of abuses of this description, but all that can be reasonably accomplished should be done to preserve and maintain the impartial administration of the law. In this case that end may yet be secured without affording encouragement to unreasonable delays, upon the facts which have been presented by way of excusing an earlier application to set aside the report of the referee. From these facts it appears that the defendant designed, as he did afterwards, to appeal from the

judgment entered upon the report of the referee. For that purpose a case was required to be made setting forth the evidence and the proceedings upon the trial. And as the evidence was taken by the referee himself, it was deemed not only injudicious but dangerous on the part of the defendant and his counsel to institute proceedings to set aside the report of the referee on the ground of misconduct on his part, until the settlement of the case could be completed, and a very considerable degree of delay seems to have intervened before that could be secured, and when that was done proceedings were at once set on foot to make this application, and the papers with notice of the motion are stated to have been served as early as that could be done, after the other end had been secured by the settlement and filing of the case, and the defendant had been relieved in that manner from all further authority over him on the part of the referee. These facts though to a certain extent qualified by statements made in the affidavits, produced on behalf of the plaintiff, still remain reasonably well establshed in the case, and they should be attended with the effect of excusing an earlier application, made by way of motion to set aside the report of the referee. No injustice has been caused by this delay to the plaintiff in the action, for he has not been prevented by means of it from collecting his judgment. Neither has the financial condition of the defendant been changed, and no doubt of his future responsibility has been suggested in the papers. Besides that, the motion does not appear to have been denied because of any improper delay on the part of the defendant in bringing it on, but for the reason that apparently the grounds upon which it was made were not sufficiently sustained by the affidavits. That, however, was an erroneous view to be taken of their effect. For they did establish the fact beyond reasonable grounds of controversy, that the referee from time to time, as the trial progressed, importuned the defendant to aid him in securing this official appointment, and believed that it could be secured in that manner, if the defendant would earnestly exert himself to bring about that end. And these importunities continued to be addressed or suggested until near the time of the decision of the action, and it was only when the defendant failed to return a response to the final letter of the referee, that he probably became disappointed in his expectations and had his mind prejudiced by

that circumstance against the person through whose failure to act this disappointment had been created.

The newly discovered evidence was not sufficient to warrant an order setting aside the referee's report. But this misconduct was certainly such as to require the interposition of the court, not only for the protection of the parties to this litigation, but more especially to secure the independent and impartial administration of the law. If that should be dispensed with in this case, it would operate as a direct encouragement to referees, who may be so inclined, to secure advantages and benefits to themselves by the position in which they may be placed, when invested with legal authority to dispose of the important rights so often submitted to their consideration. Even the appearance of improper influence and bias must be avoided. If it is not, the confidence of the public in this mode of providing for the determination of a large class of legal controversies, will be utterly subverted and destroyed, and injustice will likewise be promoted through the neglect, if not by means of the direct countenance and approval of the courts themselves. That is only to be prevented by vindicating the right of the parties to an impartial and independent trial when their legal controversy may, in any form, be brought before judicial tribunals for determination.

The order from which the appeal has been taken should be reversed, with the usual costs and disbursements, and an order should be entered setting aside both the interlocutory as well as the final report, which was made on the 14th of January, 1881, and ordering a new trial of the action to take place before another referee to be named in the order.

DAVIS, P. J., concurred.

Present — DAVIS, P. J., and DANIELS, J.

Order reversed, with ten dollars costs and disbursements, and motion granted, with ten dollars costs.