# N. Y. SUPREME COURT.

DIEGO DE CASTRO and another agt. JAMES E. BRETT and others.

*Arbitrators — power of supreme court over awards — when and when not set aside — what party alleging error must prove.*

Where a vessel, by the terms of the charter, was to proceed first to S. M., then to S. and lastly to C., the omission to go to S. before proceeding to C. was a deviation from the contract for which the defendants would be liable to respond to the plaintiffs in case damage resulted therefrom.

Such deviation could, however, be excused by defendants showing that it was the result of a stress of weather, or of causes over which they had no control, and was not the result of carelessness, or neglect or want of skill on the part of the captain of the vessel. ·

The burden of proof, in making out such excuse, is upon the defendants.

An award of arbitrators should not be set aside where the plaintiffs, with full knowledge of the situation .and of the action of the arbitrators, accepted the fruits of, and executed, the award.

The supreme court has no general supervisory power over awards of arbitrators, and where the arbitrators keep within their jurisdiction their awards, in the absence of corruption or misconduct, will not be set aside for error of judgment either in law or in fact.

Awards may be set aside for a palpable mistake of fact in the nature of a clerical error, such as a miscalculation of figures, or for an error of law appearing on the face of the award, *i. e.*, where it appears that the arbitrators intended to decide according to law, but through mistake as to the law did not.

The party alleging error, in order to sustain his action, must be able to show, from the award itself, that but for the mistake the award would have been different.

Although the arbitrators may have misunderstood the effect of their award, yet where the evidence does not justify the conclusion that they were actuated by any other purpose than that of doing justice between the parties, or that they were guilty of corruption or misconduct in making the award, the award will not be vacated.

*Special Term, September*, 1878.

*William M. Hoes* and *Samuel Jones*, for plaintiffs.

*E. H. Hobbs*, for defendants.

LAWRENCE, *J.*— The vessel, by the terms of the charter, was to proceed first to Santa Martha, then to Savanilla, and lastly to Carthagena.

*Prima facie* the omission to go to Savanilla, before proceeding to Carthagena was a deviation from the contract, for which the defendants would be liable to respond to the plaintiffs in case damage resulted therefrom.

Such deviation could, however, be excused by the defendants showing that it was the result of a stress of weather or of causes over which they had no control, and was not the result of carelessness or neglect or·want of skill on the part· of the captain of the vessel.

The burden of proof in making out this excuse would be, in any case, upon the defendants. It is conceded that the plaintiffs and defendants agreed to submit their matters of difference to arbitration, that such arbitration was had, that an award was made, and that on the 14th of March, 1874, the day after the award was made, it was acted on by the plaintiffs paying the balance due under the charter, and receiving from the defendants the amount found due for short delivery of cargo. Unless the award can be set aside, the plaintiffs are estopped from claiming any of the damages which they allege they sustained by the failure of the vessel to proceed to Savanilla from Santa Martha.

It is contended by the plaintiffs that the award was not valid and binding for the reason that before the making of the award, the defendants having submitted to the arbitrators an affidavit of the captain of the vessel in which the captain declared and certified that on his arrival at Carthagena he did, in due form, make due protest before the United States consul at that port setting forth the reasons for his not having proceeded first to the port of Savanilla, asked and claimed to

be allowed to contradict such affidavit by procuring documentary evidence from Santa Martha, Savanilla and Carthagena, and that before the matter was finally closed and decided plaintiffs should be allowed to communicate with their correspondents at those places.

Also, that the defendants agreed to allow the plaintiffs to submit such documentary evidence as plaintiffs could obtain to contradict said statements, entries and affidavits, and said arbitrators agreed to receive and consider the same.

The plaintiffs also allege that in the latter part of February or early part of March, 1874, at the time of the hearing before the arbitrators, when the vessel was loaded and about to proceed upon another voyage and defendants were desirous that her departure should not be delayed, the defendant G. A. Brett, in the presence of said arbitrators, promised that if the vessel was allowed to depart if there was any thing wrong in the statement of the captain or his affidavit, or the log-book and the same could be proven to be incorrect he would make it all right, and would make good any loss which the plaintiffs had sustained.

On the 14th of March, 1874, the arbitrators made their award as follows:

"The matter of the charter-party of the brig Nellie Antrim, which was left to us for arbitration, has been decided as follows: The vessel is entitled to the whole amount of charter and six days' demurrage, less amount paid in foreign ports and New York.

"We find vessel is responsible for one bag of coffee and one hide; also for cargo short delivered in foreign ports — M. B. B., one box types and one box of flour, and to account for which interests are ascertained; N. D., one box, either soap or tobacco; G. G., one box, contents unknown.

"No claim on either side for the pilotage half paid, nor that the charterers have any claim for damages by reason of the vessel having first gone to Carthagena in place of Savanilla. The log-book shows that it was occasioned by stress of weather,

De Castro agt. Brett.

and the affidavit of the captain that a protest was made to that effect in Carthagena corroborates it.

"NEW YORK, *March* 13, 1874.

"A. J. DOVALLE.
"J. E. MILLER."

The questions now presented for my consideration are:

First. Should the award be set aside?

Second. If the award is set aside, has the deviation been excused?

Third. And if the deviation has not been excused, have the plaintiffs sustained any damage therefrom for which the defendants should respond to them?

As to the first question, after giving to the evidence the fullest and most careful consideration, I am compelled to return a negative answer:

First. On the ground that the plaintiffs, with full knowledge of the situation and of the action of the arbitrators, accepted the award and executed it. The conduct of the plaintiffs seems to me to have been entirely inconsistent with the belief that the award was, in any event, to be a nullity.

Second. In *Fudickar* agt. *The Guardian Mutual Insurance Company* (62 *N. Y.*, 392) the court of appeals held that the supreme court has no general supervisory power over awards of arbitrators, and that where the arbitrators keep within their jurisdiction their awards, in the absence of corruption or misconduct, will not be set aside for errors of judgment either in law or fact; that awards may be set aside for a palpable mistake of fact in the nature of a clerical error, such as a miscalculation of figures, or for an error of law appearing on the face of their awards, *i. e.*, where it appears that the arbitrators intended to decide according to law, but through mistake as to the law did not.

It was further held that the party alleging error in order to sustain his action must be able to show from the award itself that but for the mistake the award would have been different

De, Castro agt. Brett.

(*See, also, The Morris Run Coal Co.* agt. *The Salt Co. of Onondaga,* 58 *N. Y.,* 667; *Hodgkinson* agt. *Fernie,* 3 *Common Bench* [*N. S.*], 189; *Perkins* agt. *Giles,* 50 *N. Y.,* 229). In this case there is no evidence which shows that the arbitrators were guilty of corruption or misconduct in making the award.

The arbitrators may have misunderstood the effect of the award, but the evidence does not justify the conclusion that they were actuated by any other purpose than that of doing justice between the parties. Nor is there in this case any palpable mistake of fact, in the nature of a clerical error, which will bring it within the rules laid down in *Fudickar* agt. *The Guardian Mutual Insurance Co.* (*supra*). Again, in the face of the award itself I am not prepared to say that it is apparent that but for the affidavit of the captain as to the protest the award would have been different.

The award does, it is true, recite that the log-book shows that the failure of the vessel to go to Savanilla before proceeding to Carthagena was occasioned by stress of weather, and the affidavit of the captain that "a protest was made to that effect corroborrates it." Whether the arbitrators would have rejected the statement in the log-book as entirely unworthy of belief, without the corroborative affidavit of the captain, certainly does not appear in the award itself.

It may be said, however, that taken in connection with the testimony of Mr. Dovalle, the arbitrator, and of Mr. Scott, that it is clear that but for the affidavit of the captain the award would have been different and that the arbitrators would have found that the deviation was not excused. The conduct of the arbitrators in immediately proceeding to make an award while they had agreed, as the plaintiffs contend, to give the latter time to prove the falsity of the captain's affidavit, and that the award should be a nullity if such proof should be produced, does not seem to show that they regarded their work at that time as a nullity. Their subsequent attempt to reopen the case in June, 1874, can have no bearing upon the

proper disposition of this question, because at that time if the award, when made, was a finality the arbitrators were *functus officio.*

For these reasons it seems to me that the plaintiffs have failed to make out a case entitling them to a judgment vacating the award (*See cases, supra*).

If my conclusions are, however, erroneous in respect to the plaintiffs having failed to make out a case entitling them to a judgment vacating the award for the reasons claimed by them there is another ground on which I think they must fail, and that is that on the testimony the defendants appear to me to have excused the deviation. The testimony of the captain confirms the statement of the log-book kept by the mate as to the cause of the inability of the vessel to reach the port of Savanilla, and shows that it resulted from the action of the current of the wind and of the bursting of the sails.

This testimony is not overthrown by that of the expert produced by the plaintiffs, nor by the suggestion of plaintiffs' counsel, that the deviation was due to another cause.

Unless, therefore, the testimony of the captain is to be disregarded as utterly unworthy of belief, his statement as to the cause of his failure to make the port of Savanilla must control me in arriving at a judgment on this branch of the case.

It is, in substance, contended by the plaintiffs that the testimony given by the captain must be discredited because in his affidavit filed with the arbitrators he made a false statement in regard to the protest, and in support of this view attention is called to the alleged discrepancy between the captain's statement in his *de bene esse* examination and in his evidence upon the trial.

An examination of the testimony of the captain does not lead me to the conclusion that such discrepancies as are alleged to exist in his statements should discredit him as a witness. In his *de bene esse* examination the witness testifies: "As soon as I came there, the first day I came up to Mr. Hamaberg, I asked for his advice; he told me to wait and he would see

what he could do for me; on the twenty-third of December he told me to discharge my cargo belonging to Carthagena; that day I noted a protest, a blank protest; it was printed in the consul's office."

Q. Was there anybody present? A. No, sir, except me and the consul, and he told me Mr. Matthieu, his partner, was sick and he could not attend to me and he would see me all right.

Q. Was it upon a piece of paper? A. No, sir, in a book; if I saw the book again I would know it.

Q. Describe the book. A. It was about an inch and a half thick; I can't tell how long it was; about fourteen inches long.

Q. How wide? A. About ten inches wide.

Q. Who presented the book to you? A. Mr. Hamaberg, the consul.

Q. Where did he get it from? A. He took it out of his office.

Q. Was this in his office? A. Yes, sir; Mr. Matthieu and Mr. Hamaberg's office was one; they were partners.

Q. Did he get the book? A. He did; it belonged to the office; then he told me to bring my log-book, in case I wanted my protest extended.

Q. Did you acknowledge it — did he swear you? A. No, sir; he didn't.

Q. What did you do? A. I signed it.

Q. In his presence? A. Yes, sir.

Q. Do you know what the protest related to? A. To the dangers of the sea and the navigation; it is a blank protest, made out generally.

In his examination at the trial, the witness stated that he noted a protest but did not extend it, and that the protest was not extended because his consignee did not require him to do it. In his affidavit before the arbitrator, he certified and declared that, "on my arrival at Carthagena, I did, in due form, make protest before the United States consul at

that port, setting forth the reasons and causes for my not having proceeded to the port of Savanilla, before proceeding to the port of Carthagena."

The testimony on the part of the plaintiffs is to the effect that no record of a protest can be found in the consul's office at Carthagena. The consul Mr. Hamaberg, referred to by the captain, is dead. The testimony of the captain on the two different examinations does not appear to me to be willfully contradictory. Looked at in one view, he did duly make a protest to the consul, who was also the consignee of the vessel, and I do not think that, in weighing his evidence for the purpose of determining whether he is worthy of belief in other respects, great stress should be laid upon the fact that in his affidavit he declares that in due form he did protest, while in his evidence he states that he noted a protest.

Furthermore, I regard the question as to whether a protest was or was not made as one which bears, in this case, solely upon the credibility of the captain's evidence.

Even if he did not protest, he would not be precluded from showing that the alleged deviation was caused by stress of weather or by the dangers of the sea; and although the protest, if made, might be evidence against him or his owners, it would not, in general, be evidence in his or their favor (*Abbott on Shipping,* 465, 466; 2 *Parsons on Mar. Law, p.* 489 *and cases in note* 3).

I cannot, therefore, reject the testimony of the captain as unworthy of belief because of the alleged discrepancies in regard to the matter of the protest; and as his testimony, relative to the cause of the vessel not reaching Savanilla, corroborates the log-book, and as he is not otherwise impeached, I think that his testimony in that respect should be accepted as true.

Accepting it as true, the defendants have excused the deviation, and it therefore follows that the plaintiff can have no cause of action against the defendants by reason thereof.

De Castro agt. Brett.

I am of the opinion, therefore, that the defendants are entitled to judgment.

First. Because the plaintiffs, with full knowledge of the situation, accepted the fruits of, and executed, the award.

Second. Because they have failed to make out a case which calls for the vacating of the award under the decisions I have referred to.

Third. Because, even if the award were vacated and set aside, the evidence shows that the alleged deviation from which the plaintiffs claim to have suffered damage arose from stress of weather and the action of the wind and of the current, and not from any want of care or skill or from the neglect of the captain of the vessel.

The findings will be settled on five days' notice.