REMINGTON PAPER COMPANY, Appellant, v. THE LONDON ASSURANCE CORPORATION of England, Respondent.

*Award — submission to arbitrators assented to by the treasurer of a corporation — estoppel as to his acts — description of the parties thereto — the details need not be stated — waiver — mistake — restoration of money paid essential to a rescission — an award, not set aside, a bar to a recovery.*

A person who is a trustee and owns nearly a quarter of the capital stock of a corporation (whose by-laws provide that it shall be managed by five trustees, and that the property and business shall be in the immediate charge of the president), and who is temporarily in charge of all its business and styles himself its treasurer, although no such office exists under its by-laws, has authority, in the absence of its president from this country, to bind the corporation by entering into an arbitration to adjust a loss under a policy of insurance.

Such an act must be considered as within the scope of his authority, and this view must certainly prevail where the so-called treasurer alleged his authority to enter into the arbitration, and where his authority to act in that regard is not challenged by the president upon his return.

A written agreement of arbitration relative to a loss sustained by the Remington Paper Company is sufficient to bind it, although made as between "A. D. Remington, President," and the insurance companies; certainly in a case where it appears that the policy ran in the same form, and that the arbitrators have

made an award, and that proofs of loss were made in accordance with that award, and that the amount due from the insurance company under the award was paid by the insurance company to the corporation, which has ever since retained the amount.

Where a submission does not require details to be stated in the making of an award, the latter is sufficient if it states the damage, without stating in detail the manner in which it was arrived at.

Any informality in an award must be deemed to have been waived where it has been accepted, proofs of loss have been made and payment has been accepted under it.

In the absence of corruption, bad faith or misconduct upon the part of an arbitrator, his award cannot be set aside for a mistake unless the same appears on the face of the award itself.

An action to procure a rescission of an award, and to have the same set aside, cannot be maintained unless the party bringing the action makes an offer in his complaint, and also upon the trial, to restore the amount which he has received under the award — with the single exception of the case in which it is conceded that, in any event, the plaintiff is entitled to all that he has received.

Where an action is brought, not only to set aside an award, but also to recover for a loss under an insurance policy after the award has been set aside, the award stands in the way of any recovery whatever in the action, and it must be set aside before any other relief can be granted.

APPEAL by the plaintiff, the Remington Paper Company, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Jefferson on the 19th day of November, 1893, upon the decision of the court rendered after a trial at the Jefferson Special Term dismissing the plaintiff's complaint.

The action was brought to set aside arbitration proceedings to determine the amount of a loss by fire, and then to recover the amount of such loss.

The total insurance upon the property was $6,600 ; the policy here in question was for $1,650. The fire occurred December 24, 1889. Mr. Dubois, representing the companies, visited the scene of the fire January 4, 1890, and then called at plaintiff's place of business, and met Charles H. Remington, who was known as the treasurer of plaintiff. Mr. Remington professed to have authority to adjust and settle the loss, and, therefore, some talk was had about the amount of the loss. Some differences of opinion upon this subject appearing to exist, an arbitration under the terms of the policy was agreed to. Mr. Parker was designated as arbitrator by Mr. Remington, and Mr. Langworthy was designated by Mr. Dubois. The

written agreement was prepared and was signed by Mr. Remington, treasurer, and by Cluff & Dubois for the companies, as general agents and adjusters. Thereafter, and January 6, 1890, the two appraisers made their award in writing, stating the total amount of the loss at $4,112.46, one-fourth of which, this defendant's share, would be $1,028.11.

Thereafter, and January 14, 1890, Mr. Remington, treasurer, made and executed the usual proofs of loss in accordance with the award by the appraisers, and the same was forwarded to and received by the defendant January 15, 1890. Thereafter, and January 23, 1890, the defendant paid the amount claimed in the proofs of loss from it, after discounting the same, for the unexpired time of sixty days, to Mr. Caswell, called the assistant treasurer of the plaintiff, the amount actually paid being $1,017.84, and he executed and delivered to defendant a receipt in full satisfaction and cancellation of the policy which was delivered up.

At the time of the fire A. D. Remington, the president of the plaintiff, was in Europe. He returned in February, 1890, and upon learning what had occurred was dissatisfied with the amount at which the loss had been adjusted and for which it had been settled. He had thereafter more or less correspondence and some interviews with the manager of the defendant. He insisted upon the whole matter being reopened, but the defendant, while expressing its willingness to correct any mistakes it was satisfied had been made, refused to reopen the matter or have a new appraisal. Nothing came of the correspondence and these negotiations, and finally this action was commenced January 13, 1891. The money paid by the defendant has been retained by the plaintiff, and the money sued for is the full amount insured, $1,650, less the amount paid, $1,017.84, the balance being $632.16. Other facts will appear in considering the legal questions raised in the case.

*Rogers & Atwell,* for the appellant.

*A. H. Sawyer,* for the respondent.

Judgment affirmed, with costs, on the opinion of WILLIAMS, J., delivered at the trial.

All concurred.

The following is the opinion of WILLIAMS, J.:

WILLIAMS, J.:

The plaintiff claims the award was void and not binding upon plaintiff, because C. H. Remington, as treasurer, had no authority for the plaintiff to make the agreement of submission. This claim, however, is hardly tenable. C. H. Remington claimed at the time that he had authority. He had, at the time, practically the entire management of the business. The president, A. D. Remington, was in Europe. The first vice-president, George P. Folts, was in New York, and paid no attention to the business. The second vice-president, C. R. Remington, was engaged in conducting his own separate business in another part of the city, and was giving the plaintiff's business little or no attention. C. H. Remington was the owner of nearly one-quarter of all the capital stock of the company; was a trustee; was elected treasurer of the company, and not only acted as treasurer, performing the duties ordinarily performed by such an officer, even making notes for the company, but, in the absence of the president, had practically the whole management of the business. It is said there was no provision in the by-laws as presented here for such an officer as a treasurer; neither was there for such an officer as second vice-president, and yet these men were elected to such offices, held the same and performed the duties thereof. The by-laws themselves are made by the same body as the officers are elected by. Although the records may not show by-laws providing for such offices, when men are elected year after year to such offices, and hold the same and perform their duties, it may be assumed such offices exist, and that there are such by-laws, though nothing with reference thereto is found in the records produced.

It is said no person had power to act for the plaintiff but the president. The by-laws did provide that the stock, property and concerns of the company should be managed and conducted by five trustees, duly elected, and that the property and business should be in the immediate charge of the president, who should be responsible for the right management of it to the trustees. It is true the five trustees were the controlling power, and that the president was primarily charged with the conduct of the business, but I apprehend others, officers or agents even, could be authorized by the trustees or president to act in their absence. The real question is whether the

acts done were fairly within the scope of the authority of the officer or agent acting. Where the powers and duties of officers are not expressly defined by the by-laws or by resolution, such powers and duties may be inferred from the names and nature of the offices held by them. I do not doubt that C. H. Remington was legally what he was represented to be, treasurer of the company, and considering the nature of such office, and the duties he did perform from day to day, especially in the absence of the president and other officers, I have no doubt he had authority, at the time this business was transacted, to do what he did do with reference to the arbitration. He did make the agreement of submission. He said he had authority to adjust and settle the case for the company; the insurance companies believed he had authority, and I do not find that the president, on his return home, made any question as to his, the treasurer's, want of authority to act in the matter, nor do I find in subsequent negotiations or correspondence between the parties any such question discussed as want of authority in the so-called treasurer to do what he had done. The president claimed that if he had been home he would not have consented to the award, but would have had it different. He claimed there was mistake, or fraud, or dishonesty on the part of both or one of the arbitrators, and that the whole thing should be reopened, new appraisers appointed and a new award made. The plaintiff claims again that the agreement of submission was not properly made or executed, was not the agreement of the plaintiff. In form it was made between " A. D. Remington, President," and the insurance companies, and not by plaintiff in its corporate name. The insurance was, however, in this same form, and as I understand, the title to the property was held by and in the name of "A. D. Remington, President." If the agreement was invalid by reason of form, the same reason would render the policies invalid. The signing by the treasurer was informal also, but, I think, he having authority to do the business, informalities must now be disregarded as having been waived. Under the agreement the arbitrators acted, made their award. It was concurred in, proofs of loss were made in accordance with the award, and the amount of the award was paid by the defendant and received and has ever since been retained by the plaintiff. During all the negotiations and correspondence had between the parties prior to this action, no

such questions were suggested.   In this condition of things mere informalities must be disregarded as having been waived by the plaintiff and can hardly now be urged to invalidate the submission or award.   There was sufficient disagreement between Remington and the representatives of the insurance companies with reference to the amount of the loss to authorize the submission.   No formal notice was necessary of the meeting or proceedings by the appraisers. Remington, the treasurer, had knowledge of the meeting of the appraisers and that they were proceeding with their work at the time they were together.   It was unnecessary to formally serve a copy of the award upon plaintiff.   Remington, the treasurer, evidently had knowledge of its contents before he made and executed the proofs of loss.   Whatever the policy may have provided the appraisers should do, I apprehend the parties might waive any provisions in the policy by the form of the submission.   I do not find anything in the submission requiring the appraisers in their award to *state separately* " sound value " and " damage."   They were, by the submission, required to estimate the cost of replacing, and make a proper reduction for the difference between the property before the fire and the property replaced new.

This was to be done in order to arrive at the conclusion as to damage.   The award was sufficient in stating the conclusion, the damage, without stating the details as to the manner of arriving at such conclusions, inasmuch as the submission did not require such details to be stated in the award.   And it may be suggested further that there was a waiver of any informality in the award by accepting it, making the proofs of loss in accordance therewith, and accepting payment of the amount found by the award.

There does not seem to be any claim made in behalf of plaintiff that there was any fraud or dishonesty practiced by the appraisers, or either of them, in making the appraisal, or any misconduct unless it may have been carelessness and failure to make sufficient examination, and acquire sufficient information as to the building and the damage.   It is suggested that Mr. Langworthy was not an impartial appraiser ; that he was friendly to the insurance companies, and had been frequently employed by them and by other companies to appraise losses occasioned by fires.   I do not quite see how these facts in and of themselves would show partiality.   Mr. Parker

was concededly friendly to the plaintiff, and had not only been employed by the plaintiff, but was, at the time of the appraisal, in plaintiff's employ. He was quite a competent man as a carpenter and builder, had been engaged in large contracts and engaged in building large and expensive buildings. Mr. Langworthy's action as appraiser was so fair and impartial in this matter that Mr. Parker agreed with him as to the appraisal, so that the services of the umpire were not needed or called for. I do not see how, under these circumstances, I can find Mr. Langworthy was not fair and impartial. It is claimed there was great injustice done in the matter, and evidence has been given in behalf of plaintiff to show that the loss was very much larger than the amount at which it was appraised. The defendant has refused to give any evidence on this subject, relying upon the legal proposition that the court cannot afford relief based upon mistakes not appearing upon the face of the award. The correspondence had before the commencement of this action deals more or less with this question. The claim made then, and still made, is that the appraisers were careless, and made mistakes and omissions in the performance of their labor, and this is very likely true. The fault of the appraisers, however, was contributed to by the plaintiff. The treasurer, Remington, who had charge of the whole business at the time, saw fit to trust the matter of the appraisal to Mr. Parker, who had more or less knowledge of the building previously acquired. He did not look after the matter himself, as the president, A. D. Remington, would very likely have done if he had been at home. It is always better and safer to look after business yourself than to trust it too much to others. The only question is whether the court has power to afford relief on account of any mistakes or omissions of the arbitrators in making the appraisal and the award.

I have examined the authorities referred to by counsel upon this question, and it seems to be well settled that an award cannot, by a court of equity, be held invalid or set aside for a mere mistake, or alleged mistake, unless such mistake appears upon the face of the award itself. The latest case upon this subject in the Court of Appeals to which I am referred is *Sweet* v. *Morrison* (116 N. Y. 19). At page 33 the court says: "It is well settled that while an award may be set aside for a palpable mistake of fact in the nature of

a clerical error, such as a miscalculation of figures, still, in general, such mistake, to be available, must appear on the face of the award or in some paper delivered with it." (Citing *Fudickar* v. *Insurance Company*, 62 N. Y. 392 ; *Morris Run Coal Company* v. *Salt Company*, 58 id. 667, and other cases.)

"The party who seeks to set aside an award upon the ground of mistake must show from the award itself that but for the mistake the award would have been different.  \*  \*  \*  The merits of an award, however unjust or unreasonable it may be, cannot be reinvestigated, for otherwise the award, instead of being the end of the litigation, would simply be a useless step in its progress.  \*  \*  \* In the absence of proof of corruption, bad faith or misconduct on his (the arbitrator's) part, or palpable mistake appearing on the face of the estimate, neither party can be allowed to prove that he decided wrong as to the law or facts." (Citing *Perkins* v. *Giles*, 50 N. Y. 228.)  To the same effect is the case of *Masury* v. *Whiton* (111 N. Y. 679), which cites and follows 50, 58 and 62 New York, above referred to.  Our own Court of Appeals having spoken so plainly and adhered to the same rule for so long a time, it is not necessary to examine other authorities.  I have, however, examined the text book and authority referred to by plaintiff's counsel.  I do not find any authority in this State to suggest the particular principle referred to in Story's Equity Jurisprudence, that any award may be set aside for a mistake not appearing upon the face of the award, if the arbitrators are satisfied that a mistake has been made and state it, etc. Indeed, the author does not fortify his statement in the text with very much authority.  The case, *Garvey* v. *Carey* (35 How. Pr. 282) does not, when carefully read, support the claim of plaintiff, so that the law applicable to this case must be held as stated in the cases in the Court of Appeals, above referred to.

That must be the more satisfactory rule.  If in every case it might be shown that the arbitrators, in fixing the amount of damage, omitted to consider some elements of damage, then the arbitration would rarely be final or avoid a subsequent controversy over the question. We should have to litigate the whole matter anew, take evidence as to the details, and the award would rarely be what it should be, final and decisive.

I do not think the court has the power in this case, under the evidence, to set aside this award for the mistakes or omissions alleged to have been made by the arbitrators. It seems to me, moreover, there is difficulty in having the award set aside upon the pleadings as they now stand, because no offer to restore the money paid was made in the pleadings or on the trial. It was not necessary to tender the money before bringing the suit because the plaintiff did not proceed upon the theory that the award had been rescinded or set aside. The action was brought for a rescission of the award and to procure it to be set aside, and in such case it is only necessary in the pleadings to offer to restore, and to make the same offer on the trial. (*Berry* v. *Insurance Company,* 132 N. Y. 55; *Vail* v. *Reynolds,* 118 id. 302.)

Such a course must be taken in all cases brought for a rescission of a contract (and the same is true of an action to set aside an award made under an agreement of submission), with a single exception, and that is where concededly the plaintiff is entitled, in any event, to all that has been received. (*Allerton* v. *Allerton,* 50 N. Y. 670; *Gould* v. *Bank,* 86 id. 81; *Tallinger* v. *Mandeville,* 113 id. 433; *Kley* v. *Healy,* 127 id. 561.)

While the present action was brought not alone to have the award set aside, but also to recover for the loss, yet the award stands in the way of any recovery whatever, and must be set aside before any other relief can be had in the action. It is claimed in behalf of plaintiff that there was concededly damage to the amount paid to which plaintiff is entitled, whatever the result of the action may be. If the action fails, then the plaintiff, of course, is entitled to what has been received, but if the action is sustained so far as to set aside the award, then the amount of damage would be open to litigation. The defendant has never admitted that the damage was at least the amount awarded. It abided by the award and paid because of the award. It has refused to go into proof of loss here because it claimed there was no power in the court to compel it to litigate that question in this action. While, if litigated, it would be very likely found that the amount of loss was really as large as found by the award, still, in no sense, could it be said the defendant conceded the loss was as large as awarded. If compelled to litigate it had a right to be just where it was before the arbitration and award was made,

and then to litigate the question anew and reduce the amount below that awarded if it could. This being so, the rule is applicable, and this case is not an exception, that the plaintiff in the pleadings must offer to restore and repeat the offer on the trial. Here the plaintiff has not proceeded upon this theory. It has persisted in keeping what it has received and asks for more upon the basis of setting aside the award. I hardly think such relief permissible, under such pleadings and in view of such trial. There is very likely power to relieve plaintiff from this difficulty, if desired, upon terms, by amendment of pleadings and an offer to restore, as a part of the trial.

It seems to me there is difficulty also in the way of plaintiff's maintaining this action by reason of the time allowed to elapse before the action was begun. I do not, however, deem it necessary to examine this question very closely, considering the conclusion to which I have arrived upon the other questions in the case. I am of the opinion the action cannot be maintained and must order judgment dismissing the complaint, with costs.

Formal decision may be prepared and agreed upon as to form, by counsel, and submitted to me for signature.