STERLING SPINNING & STAMPING WORKS, INC., Plaintiff, *v.* KNICKERBOCKER INSURANCE COMPANY OF NEW YORK and Others, Defendants.

STERLING SPINNING & STAMPING WORKS, INC., Plaintiff, *v.* CHICAGO FIRE AND MARINE INSURANCE COMPANY OF CHICAGO, ILLINOIS, and Others, Defendants.

Municipal Court of New York, Borough of Manhattan, First District, May 8, 1930.

*Alfred B. Nathan* and *S. Howard Imbrey,* for the plaintiff.

*Bonynge & Barker* [*Robert J. Sykes* and *George D. Vail, Jr.,* of counsel], for the defendants.

SPIEGELBERG, Official Referee. These actions are brought to recover a fire loss sustained by the plaintiff. The appraisal clause

in the policies, so far as applicable, reads: " In case the insured and this Company shall fail to agree as to the amount of loss or damage, each shall, on the written demand of either, select a competent and disinterested appraiser."

The parties having been unable to agree upon the amount of the loss, the plaintiff demanded an appraisal and gave the name of the person selected as appraiser. The agent for the defendants designated John Hankin as their choice for appraiser. The plaintiff objected to the selection of Mr. Hankin on the ground that he was not competent or disinterested. The defendants failed to appoint another appraiser in place of Mr. Hankin, whereupon these actions were begun. After the plaintiff had started with his proof of loss, it was agreed by counsel for both sides that, before proceeding further with the trial, the question should be decided whether Mr. Hankin was disinterested within the meaning of the clause in the policy. The plaintiff withdrew his objection to Mr. Hankin's competency. No specific acts of unfair dealing in this or in any other case are charged against Mr. Hankin, but the plaintiff claims that the frequent instances of employment of Hankin by these defendants and other insurance companies disqualified him from acting as appraiser. It appears that Hankin was a contractor and had been employed for about seventeen or eighteen years last past by insurance companies in the capacity of estimator or appraiser. In the years 1922 to and including 1928 Hankin was employed 1,792 times by insurance companies to make estimates, and 92 times to make appraisals. His gross income during these seven years from insurance companies was approximately $250,000, which represented seventy-nine per cent of his total income from all sources. In four of the seven years his income from insurance companies amounted to between ninety per cent and ninety-eight per cent of his total income.

The plaintiff contends that these facts in themselves disqualify Hankin from being designated as appraiser on behalf of the defendants. I am constrained to agree with this contention. It is unnecessary to set out at length my reasons in support of the conclusion which I have arrived at, as they are based upon the persuasive opinion in Coon v. National Fire Insurance Co. of Hartford (126 Misc. 75; affd., 218 App. Div. 812; affd., 246 N. Y. 594, in both instances without opinion). In that case the appraiser had acted for the insurance companies for a period of ten years in 560 appraisals and 205 estimates, " and that he received for such services $23,027.20, to which may be added his compensation in this case of $2,608.43." The court very fully reviews the cases in point and comes to the conclusion that the appraiser on account of his frequent retainers by the

insurance companies was not disinterested. The learned counsel for the defendant seeks to distinguish that case from those under consideration upon the claim that the question of fraudulent representations and misconduct of the appraiser and the umpire entered into the decision of the court. To my mind it is quite clear that the court rejected the appraiser solely upon the ground of his interest. The court says: " His name should not have been suggested, with or without representations because of his previous employment by the insurers. As to his relations with the insurance companies and their agents there was a deceptive silence as to his true position with them. He was to perform a judicial duty. Honesty, disinterestedness, and competency were his qualifications. His relations with the insurance companies disqualified him from acting in that capacity." And again: " I have had no difficulty in arriving at a decision that the appointment and award should be set aside. In reaching that conclusion, no consideration is given to the selection or specific actions of the umpire. Sufficient to say Millard was the power in the affair, and should not have undertaken to act, where the contract and the law provides for impartial, unbiased, disinterested, and fair-minded action."

The learned counsel for the defendants bases his main reliance on *Cohen* v. *Atlas Assurance Co. of London* (163 App. Div. 381, 386). In that case it appeared that the appraiser had acted six times on fire losses, once for the assured and five times for the insurers, and the court said: " That fact is not sufficient in itself to disqualify him or to make the action of the defendants in selecting him a fraud upon the plaintiff."

Here no question of fraud is raised, but timely objection was made by the plaintiff which has not been heeded. But the principal point of difference between that case and those under consideration is that in that case there was a casual employment covering only a few cases, while in these the number exceeded 1,800. The cases of *Remington Paper Co.* v. *London Assurance Corp.* (12 App. Div. 218), and *Levin* v. *Northwestern National Insurance Co.* ([C. C.] 185 F. 981), likewise cited by the defendants, do not state the number of times which the appraiser to whom objection was made had been employed, although an examination of the case on appeal in the *Remington* case reveals the fact that the appraiser had been employed between thirty and thirty-five times by the insurance companies.

It is, of course, difficult, if not impossible, to accurately fix the number of employments which will disqualify an appraiser. It is likewise impossible in an aggregation of small stones to determine which stone makes it a heap of stones. But in most cases, seeing small stones piled together, it is not difficult to say whether it may be

called a heap of stones. And thus it is in a case of this kind. Twenty or forty or even one hundred cases of employment over a period of years may not disqualify an appraiser to act when 1,800 cases will. The duty of an appraiser, no matter how friendly he may be with the side that appointed him, is to bring out all the facts in a particular case, so that the true value of the loss may be determined. It is too great a task for the average man, no matter how honest his intentions may be, to act as favorably to one side as to the other, when his livelihood in the past was derived from one of the parties, and the hope of future employment rests upon the same party. It is to guard against such temptation to which human nature may be subjected that the standard clause was directed by the Legislature to be inserted in the insurance policies requiring the appointment of *disinterested* appraisers by both sides.

Although the question is not free from doubt I hold that Hankin should not have been named as appraiser. The trial for the purpose of proving the loss will proceed at such time as may be agreed upon.