In the Matter of the Arbitration between RUSSELL B. MARCHANT, as Trustee in Bankruptcy of BEAR TRACTORS, INC., Respondent, and MEAD-MORRISON MANUFACTURING COMPANY, Appellant.

First Department, June 18, 1929.

*Edward F. McClennen* of counsel [*Arthur P. French* with him on the brief; *McLaughlin, Knollenberg & Leisure*, attorneys], for the appellant.

*Kenneth M. Spence* of counsel [*Kenneth E. Walser* and *Louis S. Weiss* with him on the brief; *Charles M. Travis*, attorney], for the respondent.

O'MALLEY, J. Two of the three arbitrators herein have awarded damages in the sum of $935,487.09. The third arbitrator's minority report, however, awarded nominal damages of but $1, and this upon the theory that the damages attempted to be proven were too speculative and indefinite in character to form a basis for an award.

Of the numerous questions raised by the appellant one is that the issue of damages was at no time before the arbitrators. Such issue, it is asserted, was not covered by the arbitration clause in the contract between the parties. Appellant's contention in this respect is in accord with our view and must be sustained.

On May 25, 1922, the appellant, Mead-Morrison Manufacturing Company, hereinafter referred to as Mead-Morrison, a Maine

corporation with its principal place of business in Boston, Mass., made a contract with Bear Tractors, Inc., a New York corporation doing business in the city of New York. The contract called for the manufacture and delivery by the former of a minimum of 500 tractors to be manufactured according to drawings and specifications to be furnished by Bear Tractors. The contract recited that Bear Tractors was about to undertake the sale of tractors and the necessity for prompt and regular manufacture and delivery, which was provided for as follows: Fifteen during the fifth month after date; twenty-five during the sixth month; thirty-five during the seventh month; the rate of subsequent deliveries to be specified by Bear Tractors, and order given ninety days before delivery would be required.

The arbitration clause of this contract reads: " If for any reason any controversy or difference of opinion shall arise as to the construction of the terms and conditions of this contract, or as to its performance, it is mutually agreed that the matter in dispute shall be settled by arbitration, each party to select an arbitrator, and the two so selected to select a third, and the decision of the majority of such arbitrators given after a full hearing and consideration of the matter in controversy shall be final and binding upon the parties, and a condition precedent to any suit upon or by reason of any such controversy or difference. The cost of such arbitration shall be paid by the party against whom the majority of such arbitrators render such decision."

The controversy between the parties which arose following the making of the contract was based largely upon the claim of Bear Tractors that Mead-Morrison was late in deliveries and the tractors delivered were defective, not being in accordance with specifications.

Without at this time considering in detail the nature and extent of such defaults, suffice it to say that the majority award finds that they " resulted in the bankruptcy of Bear Tractors, Inc., caused a ruination of its enterprise and pecuniary loss."

On May 26, 1924, Russell B. Marchant, who will hereinafter be referred to as the trustee, was appointed receiver of Bear Tractors, and later and on June 24, 1924, elected trustee. As such he continued performance of the contract until April 22, 1925, when he made formal written claim upon Mead-Morrison for damages because of the latter's breach of the contract and a demand for arbitration, at the same time designating an arbitrator. Mead-Morrison, while contending that there was no contract between it and the trustee; that the arbitration provision was void in Massachusetts where the contract was made and was to

be performed; and that the trustee had waived the right to arbitrate, nevertheless nominated one Robert D. Weston as its arbitrator.

The two arbitrators thus designated having failed to agree upon a third arbitrator, the trustee, on July 30, 1925, moved at Special Term for his appointment and for an order directing the parties to proceed to arbitration in accordance with the terms of the contract. Mead-Morrison then petitioned to remove the proceeding to the United States District Court upon the ground of diversity of citizenship, alleging that the necessary jurisdictional sum of $3,000 was involved. Despite such objection the Special Term retained jurisdiction and the Federal court itself later denied the application for removal, but without prejudice to a renewal in the event that the award of damages, if any, should exceed the jurisdictional sum. (*Marchant* v. *Mead-Morrison Mfg. Co.*, 7 F. [2d] 511.)

In the meantime an order of Special Term directing arbitration and appointing the third arbitrator was made. Such order and the decision on which it was based overruled numerous objections by Mead-Morrison and was decisive upon the arbitrable nature of the controversies relating to breaches of the contract, the right of the trustee to enforce arbitration, his non-waiver of such right, and the propriety of compelling arbitration in New York, notwithstanding that the contract was made in Massachusetts and was to be there performed. On appeal this court affirmed without opinion (*Matter of Marchant*, 215 App. Div. 759), denied reargument and leave to appeal to the Court of Appeals (215 App. Div. 813), which leave was later and on March 4, 1926, denied by the latter court itself.

Owing to a disagreement between the arbitrators as to the time and place of the commencement of hearings, a further motion at Special Term by the trustee was rendered necessary. This resulted in an order appointing a time and place for taking proof on behalf of the trustee in New York city, and after the completion of such proofs a further time in the city of Boston for taking proof on behalf of Mead-Morrison, the latter having insisted that all hearings be held in the city of Boston. Such order, made on January 11, 1927, was not appealed from, but it is now sought to be reviewed as an intermediate order on the appeal from the judgment. Further reference thereto will later be made.

Hearings before the arbitrators began on February 3, 1927, and continued until April first of that year. There were in all twenty-seven hearings at which 2,877 pages of testimony and 423 exhibits were received. As already noted, the majority of the arbitrators made the award, the amount of which has already been stated,

and which included the sum of $14,785.59 as costs to be paid by Mead-Morrison.

On October 14, 1927, the trustee moved at Special Term for an order confirming the award and for judgment. At the same time Mead-Morrison filed another petition for removal to the United States District Court, alleging that there was now involved the necessary jurisdictional amount. On October twenty-eighth following the trustee moved to remand, but his motion was denied. Thereupon Mead-Morrison made a cross-motion in the District Court to vacate the award. The motion to confirm and the motion to vacate the award were brought on together and resulted in a decision confirming that portion of the award which found Mead-Morrison guilty of a breach of contract, but vacating the award in so far as money damages were concerned and apportioning the costs of the arbitration, two-thirds to the trustee and one-third to Mead-Morrison. From such order thus made, cross-appeals were taken to the United States Circuit Court of Appeals, the trustee assigning as error, among other things, the denial of the remand. The appeal resulted in a reversal and a remand of the suit to the State court, apparently upon the ground that as the cause already had once been remanded, it should remain in such jurisdiction, there being but one proceeding or suit. (*Marchant* v. *Mead-Morrison Mfg. Co.*, 29 F. [2d] 40.) The petition of Mead-Morrison to the United States Supreme Court for a writ of certiorari was denied. (*Mead-Morrison Mfg. Co.* v. *Marchant*, 278 U. S. 655.)

The trustee's motion for confirmation of the award resulting in the order and judgment appealed from was then brought on at Special Term.

While the testimony in full is not before us, the affidavits and the reports of the arbitrators sufficiently disclose the nature of the controversies and the contentions of the parties. However, in the view we take of the case, it becomes unnecessary to discuss the evidence fully for the reason that the arbitrators were unanimous in finding that Mead-Morrison had delayed the delivery of tractors and thus breached the contract. The majority report finds such breaches respecting delay to consist in failure to equip its plant with proper and adequate machinery; to make timely order of materials; to secure competent mechanics and employees; lack of proper shop supervision; and the acceptance and performance of another contract during the period required for the first deliveries of tractors. These breaches are termed in the majority report as gross and wanton. The 11th paragraph of such report reads:

" The evidence submitted before the Arbitrators, establishes in

detail a total breach of the contract by Mead-Morrison Manufacturing Co. The evidence in this respect is so clear and convincing that the Arbitrators are unanimous in the opinion that Mead-Morrison Manufacturing Co., was guilty of a gross breach of contract.

"The evidence submitted on behalf of Mead-Morrison Manufacturing Co., fails either to justify or palliate its general incompetency in reasonably placing orders for raw materials, tools, jigs, dies and machinery necessary for the proper manufacture of tractors; its failure to employ competent and skilled follow-up men, and its inability to co-ordinate its shop departments into a working whole for the expeditious manufacture and assembly of tractor parts."

In the minority report of Mead-Morrison's arbitrator, Robert D. Weston, it is stated: "I agree with the majority of the Board of Arbitrators that the Mead-Morrison Company failed to perform its contract in respect to the delivery of tractors. By the terms of the contract the first fifteen tractors were to be delivered by October 25, 1922. The delivery of the first fifteen was not completed until May 9, 1923."

While the majority of the arbitrators placed the entire responsibility for such delay upon Mead-Morrison, arbitrator Weston found that the Bear Tractors, was also at fault and must bear some responsibility. He concurred, however, with the majority in finding that Mead-Morrison's "failure to perform its part of the contract on time caused the Bear Company damages," and concluded: "But, even assuming that the delay, for which the Mead-Morrison Company was responsible, was as great as the majority of the Board think it was, I am clearly of the opinion that no damages have been proved with any of that certainty which the law requires. This is the second matter as to which we differ."

While, as already indicated, in the view we take of the case we are not concerned with the basis or method of damages adopted in the majority report, it is to be noted that such award is predicated upon the theory that the breach by Mead-Morrison resulted in a total loss of the invested capital of Bear Tractors amounting to a sum in excess of $1,500,000. In arriving at the net damages, there was deducted from this amount certain expenses not necessarily expended by Bear Tractors in expectation of the performance of the contract. Such expenses occurred prior to the date of the contract and amounted to some $693,000. This sum deducted from the total loss of invested capital leaves a balance which is found to be the damages herein.

Not only was the measure of damages adopted extreme, but the

proof thereof was in many respects speculative. Though a note-worthy point in the proceedings, it is one, however, upon which we may not base either a vacatur or a modification of the award, for arbitrators are not bound by rules of evidence nor the measure of damages proper in a civil action. (*Fudickar* v. *Guardian Mutual Life Ins. Co.*, 62 N. Y. 392; *Sweet* v. *Morrison*, 116 id. 19; *Matter of Wilkins*, 169 id. 494; *Matter of Goff & Sons, Inc., and Rheinauer*, 199 App. Div. 617.)

As already indicated, the original order directing that the parties proceed to arbitration, affirmed by this court (215 App. Div. 759), is conclusive upon practically all questions sought now to be raised by the appellant Mead-Morrison. Its claim that such order, in directing arbitration under a contract made and to be performed in Massachusetts, violates its constitutional rights under section 1 of the Fourteenth Amendment of the United States Constitution, was raised at Special Term when the original application to compel arbitration was entertained and in the points of counsel before this court. The matter was settled by our former decision.

But while the result of that decision was to hold that the differences arising between the parties under the contract were arbitrable, it did not go to the extent of binding us on the question of damages. The order appealed from and here affirmed, directing the parties to arbitrate, merely provided that they " proceed to arbitration in accordance with the terms of said contract." The petition, moreover, in this respect asked only that the parties be directed " to proceed to arbitration in accordance with the terms of said agreement." There were no specific provisions with respect to the scope of the arbitration. The question of the interpretation of the contract in this respect is, therefore, still open.

It is to be noted that paragraph " 17 " of the contract provides for arbitration with respect to " any controversy or difference of opinion  *  *  *  as to the construction of the terms and con-ditions of this contract, or as to its performance." In addition, it is provided that a decision of the arbitrators shall be final and binding upon the parties " and a condition precedent to any suit upon or by reason of any such controversy or difference."

The interpretation of a contract to arbitrate is subject to the same rules as any other. We may take into consideration the situation of the parties at the time of the inception of the agreement, the matters covered by it and the law in the light of which it was entered into. It is also permissible to predicate interpretation on such practical construction as may have been placed on it by the parties themselves.

Considering the arbitration clause with these principles in mind

it would seem that the parties might well be said not to have contracted for arbitration as to damages. One of the parties to the contract had its principal place of business in Massachusetts. The contract was made there and was there to be performed. At the time of its making the Massachusetts courts would not specifically enforce an agreement to arbitrate. The parties, therefore, must have contemplated some restriction, at least, upon this covenant. It was for this reason, no doubt, that arbitration was made a condition precedent to the bringing of any civil suit. This fact also lends force to the contention that the arbitrable disputes would not involve the assessment of damages, but that such would be consequent upon an action at law after an arbitration first had in other respects.

While, as stated in *Matter of Young* v. *Crescent Development Co.* (240 N. Y. 244, 248), " the question may be close and debatable," we do not think that the arbitration clause here should be construed as including such a claim as the one made against the appellant with respect to money damages. From the situation of the parties and the language used, we conclude that the assessment of damages was not within the contemplation of the parties at the time the agreement was made. Furthermore, the respondent has put such practical construction upon the agreement. While the petition to compel Mead-Morrison to arbitrate specified numerous items in dispute and prayed for arbitration pursuant to the contract, it was not averred that damages were claimed or that damages might follow as a consequence of and by any decision with respect to the items of dispute specifically enumerated. While the letter of April 22, 1925, already mentioned, asserted that Bear Tractors had sustained damages, the demand for arbitration contained therein did not include them. The language of the demand, so far as material, was: " I hereby demand that you arbitrate all controversies and differences of opinion * * * as to the construction of the terms and conditions of said contract, and/or as to its performance."

Nor is the appellant precluded from raising the question at this time. While it went into the question of damages before the arbitrators, it did so only after strenuous objection and upon a clear understanding that by proceeding it did not waive any of its rights, and that the question would be reserved for future disposition. Thus was avoided another application to the court to compel Mead-Morrison to arbitrate damages. The trustee is not now in a position to object in this respect.

As a practical matter, therefore, the arbitrators have in effect made an award upon a matter not submitted to them. We may,

therefore, modify the award in such respect under the provisions of subdivision 2 of section 1458 of the Civil Practice Act. Accordingly, we confirm the award in so far as it relates to the breaches of the contract on the part of Mead-Morrison, and modify the judgment and order appealed from in the respects noted, leaving the assessment of damages, if any, for future adjustment according to this opinion.

In conclusion we deem it advisable to refer briefly to the appeal of Mead-Morrison from the order which directed testimony to be taken partly in New York and partly in Boston. As already noted, no direct appeal was taken therefrom, and in addition it is to be observed that the provisions of this order, especially with respect to taking testimony in Boston, was of advantage to the appellant and was made at its request and as a result of a stand taken by its arbitrator that all hearings should be held in Boston. In the exercise of its discretion the court provided for hearings partly in New York and partly in Boston. The appellant approved the order as to form and without appealing therefrom proceeded with the hearings. In the circumstances the order in question may not be deemed an intermediate order. The motion to compel arbitration is a distinct and separate proceeding from the proceeding which is now before us. (*Matter of Hosiery Mfrs. Corp. v. Goldston*, 238 N. Y. 22.) Moreover, such order was made in conformity with the demands of appellant, and having availed itself of the advantages of such order, it may not now question its propriety.

The judgment and order granting confirmation of award should be modified in accordance with this opinion, without costs of this appeal; the cost of the arbitration proceeding to be divided equally between the parties, and the appeal from the order for the taking of testimony in New York and Boston dismissed.

FINCH and McAVOY, JJ., concur; DOWLING, P. J., and MARTIN, J., dissent and vote to affirm.

Judgment and order granting confirmation of award modified in accordance with opinion, without costs of this appeal; the cost of the arbitration proceeding to be divided equally between the parties, and the appeal from the order for the taking of testimony in New York and Boston dismissed. Settle order on notice.